IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNT w\*\*\*\*\*\*\*\*\*\*\*\*1@gmail.com THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC<br><br>IN THE MATTER OF THE SEARCH OF A WIRELESS TELEPHONE ASSIGNED TELPHONE NUMBER (615) \*\*\*-\*\*\*\*, BELIEVED TO BE USED BY WILLIAM ANDREW OGLES | Case Nos. 24-mj-4250<br>24-mj-4276 |

## GOVERNMENT'S CONSOLIDATED RESPONSE TO EMERGENCY MOTIONS FOR RETURN OF PROPERTY

The United States of America, by and through the undersigned government attorneys, hereby files its response to William Andrew Ogles's motions for return of property. *See* Case No. 24-mj-4250, D.E. 4; Case No. 24-mj-4276, D.E. 2 (collectively, "Mot."). Invoking the U.S. Constitution's Speech or Debate Clause, Ogles, who is a Member of Congress, requests that this Court order the government to return to him a personal cell phone (the "Personal Device") and a personal email account (the "Personal Email Account") (collectively, the "Subject Devices"), both of which the government seized pursuant to lawful warrants. This Court should deny Ogles's motions.

The Speech or Debate Clause by its terms protects "Speech or Debate"; despite Ogles's assertions to the contrary, it does not protect against the disclosure of information through a criminal search warrant, which involves no "question[ing]" of a Member of Congress. U.S. Const. Art. I, § 6, Cl. 1. Members of Congress are provided civil and criminal immunity for legislative acts. Members also may not be compelled to testify about their legislative acts or have evidence

of their legislative acts used against them before either a grand or petit jury. However, "[t]he Speech or Debate clause does not prohibit inquiry into illegal conduct simply because it has some nexus to legislative functions." *United States v. Brewster*, 408 U.S. 501, 528 (1972). Accordingly, the Supreme Court has supported Executive review of legislative acts evidence during a criminal investigation, and the majority of courts of appeals to have addressed the issue have explicitly held that such review is consistent with the Constitution. *United States v. Renzi*, 651 F.3d 1012, 1032 (9th Cir. 2011); *In re Grand Jury Investigation*, 587 F.2d 589, 597 (3d Cir. 1978). The U.S. Court of Appeals for the Sixth Circuit has not yet addressed the issue. Consistent with the plain text of the Clause, Supreme Court precedent, and the majority of circuit authority, this Court should permit the government to review the Subject Devices without any restrictions beyond the limits provided by the warrant itself.

## BACKGROUND

Ogles is a sitting member of the U.S. House of Representatives, representing Tennessee's 5th Congressional District, which lies within the Middle District of Tennessee. Ogles was first elected to Congress on or about November 8, 2022, and took office on or about January 3, 2023. Since Ogles first ran for Congress in 2022, his principal federal campaign committee has been Ogles for Congress, with a listed address in Columbia, Tennessee, located in the Middle District of Tennessee. Ogles maintains a residence within the Middle District of Tennessee.

On July 12, 2024, this Court approved a warrant to seize and search information associated with a Google account registered to Ogles, which included the Personal Email Account. *See* 24-mj-4250. The search warrant was directed to Google LLC and noted that the information was stored at the company's headquarters in Mountain View, CA, located in the Northern District of California. *Id.* This Court placed the warrant and associated materials under seal and ordered

Google not to disclose the existence of the warrant to Ogles or any other person based on a finding that there was reason to believe notification would seriously jeopardize the investigation. *Id.* Soon thereafter, Google provided information subject to the warrant, including the Personal Email Account, to the Federal Bureau of Investigation ("FBI"). To the government's knowledge, Ogles was unaware of this legal process until the government disclosed its existence to him a month later with this Court's authorization, as described below. To date, no government agent has reviewed the contents of the Personal Email Account.

On July 30, 2024, this Court approved a warrant to seize and search Ogles's personal cell phone. *See* 24-mj-4276. On August 2, 2024, FBI agents executing the warrant seized the Personal Device from Ogles outside his residence in the Middle District of Tennessee and subsequently made an electronic copy of its contents. During the seizure of the Personal Device, Ogles stated that he possessed other electronic devices that he used for official purposes as a Member of Congress. Those devices were not subject to the search warrant and remain in Ogles's possession. As far as the government is aware, the Personal Device is not connected to the Representative's congressional email accounts and instead is connected to personal or campaign accounts for Ogles. To date, no government agent has reviewed the contents of the Personal Device.

A few days after agents seized the Personal Device, counsel for Ogles contacted the government and stated that the Personal Device likely contained materials covered by the attorney-client and Speech or Debate privileges. With respect to potential attorney-client materials, and consistent with well-established case law and practice, the government requested that counsel provide a list of attorneys and proposed search terms so that the government could implement an attorney-client filter protocol. Counsel agreed. However, to date, counsel has not provided the government with a list of attorneys or proposed search terms.

3

With respect to potential Speech or Debate privilege, the government explained the Department's longstanding position that Speech or Debate is a use privilege for a Member to assert before a grand or petit jury, not a disclosure privilege, and therefore no filter protocol was required. The government also advised Ogles's counsel that its investigation was not related to Rep. Ogles's legislative acts, which, the government explained, provided an additional reason why the Speech or Debate Clause is not relevant to the government's search of the Personal Device. The government directed counsel to the warrant, which indicated that the government was seeking evidence related to campaign finance violations. Regardless, the government offered to give counsel two weeks to file an under-seal motion in the Middle District of Tennessee to seek a judicial determination on the issue. The government stated that, in the interim, it would not review the contents of the Personal Device.

On August 12, 2024, this Court granted the government's request to disclose the existence of the Google search warrant to counsel for Ogles in the interests of judicial economy in the event Ogles's anticipated motion raised claims that applied to the government's review of both Subject Devices. *See* Case No. 24-mj-4250, D.E. 2, 3. The Court authorized the government to disclose the sealed search warrant and its attachments to Ogles's counsel, but the Court kept the search warrant and all related documents under seal. *Id.*, D.E. 3. The government relayed the Court's decision to Ogles's counsel and provided them with a copy of the Google search warrant and its attachments. Ogles's counsel confirmed that they were previously unaware of the existence of the search warrant and Google's production of information, including the Personal Email Account, to the FBI.

That same day, Ogles's counsel informed the government that they were not planning to file their motion in this Court. Instead, they planned to file in the U.S. District Court for the District

of Columbia ("D.D.C."), which is the only federal district court bound to apply the Speech or Debate protocols established in *United States v. Rayburn House Off. Bldg.*, 497 F.3d 654 (D.C. Cir. 2007) (*Rayburn*).  The government was surprised, and advised counsel that D.D.C. had no plausible jurisdiction over the search warrants issued by this Court or the property seized in the Middle District of Tennessee and the Northern District of California pursuant to them.

A week later, on August 20, 2024, Ogles's counsel changed course, admitting to the government that they did not believe they could establish jurisdiction in D.D.C., and advised that they would proceed with a motion in this Court.  Counsel requested that the government extend its agreement to withhold review of the contents of the Subject Devices for an additional two weeks to give counsel additional time to prepare a motion for this Court.  The government agreed.  It again requested that Ogles file his motion under seal, particularly as it pertained to the Google search warrant because that aspect of the government's investigation was not public and this Court had only authorized limited disclosure to Ogles's counsel for purposes of addressing potential Speech or Debate issues.

Around this time, Ogles's counsel asked whether the government would categorize Ogles as merely a fact witness, or as subject or target of the government's investigation.  The government stated that, at that time, under the definitions provided in the Justice Manual, Ogles was best categorized as a subject, meaning he was a person whose conduct was within the scope of the government's investigation.  *See* JM 9-11.151.  However, the government cautioned counsel that those definitions, which strictly apply only in the context of grand jury witnesses, are fluid and that a person's status can change as the government gathers additional evidence.  At no point did the government "admit" to Ogles's counsel "that they do not have substantial evidence linking Congressman Ogles to the commission of a crime."  Mot. 3. The government has made no

statement to Ogles's counsel regarding the quantum of evidence it possesses, or the individuals who are (or may be) implicated in the ongoing investigation. The government also reiterated that the focus of its investigation was not related to Ogles's legislative acts. In addition to the government's representations about the focus of the investigation, Ogles's counsel has a copy of the warrants, which identify the information that is authorized to be seized by the government. Specifically, Section II of Attachment B for each warrant describes the information to be seized, and neither warrant indicates that the government seeks to seize evidence related to Ogles's legislative acts.

On September 3, 2024, the agreed-upon filing date, Ogles's counsel informed the government for the first time that Ogles wanted to file his motion publicly. The government objected and raised its previously stated concerns, but counsel proceeded with a public filing without notifying this Court of the government's objection to an unsealed filing. Soon after counsel filed the instant motions, Ogles gave an interview in which he stated, "Last month, the Biden/Harris FBI took possession of my cell phone and email account." He added, "I have nothing to hide, and I did nothing wrong. I'll always comply with lawful requests from law enforcement. But I will never stop fighting against the unconstitutional abuses of the current administration."[1]

## STATEMENT REGARDING JURISDICTION

Federal Rule of Criminal Procedure 41(g) permits "[a] person aggrieved by an unlawful search and seizure of property . . . [to] move for the property's return." Ogles asks this Court to exercise its equitable jurisdiction under Rule 41(g), claiming he will suffer irreparable harm and there is no adequate remedy at law. *See United States v. Search of Music City Mktg., Inc.*, 212

---

[1] https://tennesseestar.com/news/legal-filing-shows-rep-andy-ogles-not-target-of-fbi-as-maga-republican-demands-cell-phone-back-cites-speech-and-debate-clause-of-constitution/tpappert/2024/09/04/ ("*Tennessee Star*").

F.3d 920, 923 (6th Cir. 2000). Ogles claims that this Court has jurisdiction under Rule 41(g) to order return of both the Personal Email Account and the Personal Device.

However, Rule 41(g) provides that "[t]he motion must be filed in the district where the property was seized." Ogles does not address the fact that the warrant for the Personal Email Account was directed at Google, not him, and that Google (and the Personal Email Account) was located in the Northern District of California at the time of seizure. Thus, although Rule 41(g) authorizes this Court to consider Ogles's motion as it pertains to the Personal Device, it is not clear whether Rule 41(g) provides jurisdiction for Ogles's motion as it pertains to the Personal Email Account.[2]

For the reasons set forth below, Ogles cannot establish that he will suffer irreparable injury. The Speech or Debate Clause is a use privilege, not a disclosure privilege. Moreover, Attachment B to the warrants makes clear that the government's authorization to seize evidence is limited to information that constitutes evidence of certain criminal violations and that pertains to certain matters unrelated to Ogles's legislative acts. The Court should therefore decline to exercise its equitable jurisdiction and deny Ogles's motions.

## ARGUMENT

Ogles claims that the Speech or Debate Clause requires this Court to "order the Department of Justice to relinquish" his personal cell phone and personal email account—each seized pursuant to a lawful search warrant—"to Congressman Ogles and his counsel, so that the Court can supervise their review and prevent disclosure of legislative materials to the Executive Branch." Mot. 27. His interpretation of the Clause cannot be reconciled with its text, purpose, or history. It

---

[2] As a practical matter, regardless of the resolution of this jurisdictional question, the government recognizes that the Court's ruling as to the Personal Device will inform the government's handling of the Personal Email Account.

threatens to undermine, rather than reinforce, the separation of powers by making any electronic device that may happen to contain legislative materials "a sanctuary for crime." *United States v. Brewster*, 408 U.S. 501, 521 (1972) (quoting *Williamson v. United States*, 207 U.S. 425, 439 (1908)). Ogles's absolute non-disclosure rule would apply even in circumstances, like this one, where the government's investigation is unrelated to legislative acts, as well as where many of the records seized pre-date the Member's time in Congress, and therefore are not subject to the protection of the Speech or Debate Clause.

### A. The Speech or Debate Clause Does Not Protect Against the Mere Disclosure of Legislative Materials in the Execution of a Search Warrant

The Speech or Debate Clause provides that, "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. Art. I, § 6, Cl. 1. The Clause strikes a balance within the separation of powers. It "is broad enough to insure the historic independence of the Legislative Branch, essential to our separation of powers, but narrow enough to guard against the excesses of those who would corrupt the process by corrupting its Members." *Brewster*, 408 U.S. at 525. It is well established that the Clause does not "confer a general exemption upon Members of Congress from liability or process in criminal cases." *Gravel v. United States*, 408 U.S. 606, 626 (1972).

Consistent with its text, "[t]he heart of the Clause is speech or debate in either House." *Id.* at 625. The Supreme Court has extended the Clause to preclude questioning into all "legislative acts," in light of the Clause's purpose "to prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary." *Id.* at 617, 624–25. Nonetheless, "the courts have extended the privilege to matters beyond pure speech or debate . . . only when necessary to prevent indirect impairment of such deliberations." *Id.* at 625 (citation and internal quotation marks omitted). The Clause "does not extend beyond what is necessary to preserve the integrity

of the legislative process." *Brewster*, 408 U.S. at 517; *see Forrester v. White*, 484 U.S. 219, 224 (1988) (courts have "been careful not to extend the scope of [the Clause] further than its purposes require"). And it does not extend to non-legislative criminal acts, which are, "obviously, no part of the legislative process or function." *Brewster*, 408 U.S. at 526.

In keeping with that balance, the Clause gives Members three protections. First, it grants them civil and criminal immunity for legislative acts. *See Doe v. McMillan*, 412 U.S. 306, 311–12 (1973); *United States v. Johnson*, 383 U.S. 169, 184–85 (1966). Second, the Clause guarantees that a Member, or his alter ego, "may not be made to answer" questions about his legislative acts. *Gravel*, 408 U.S. at 616. Third, the Clause bars the use of legislative-act evidence against a Member. *United States v. Helstoski*, 442 U.S. 477, 487 (1979). Those three protections—immunity from suit, a testimonial privilege, and a prohibition on use, all limited to legislative acts—are "broad enough to insure the historic independence of the Legislative Branch, essential to our separation of powers, but narrow enough to guard against the excesses of those who would corrupt the process by corrupting its Members." *Brewster*, 408 U.S. at 525. Thus, while the Clause protects the legitimate prerogatives of the Legislative Branch, it does not "make Members of Congress super-citizens, immune from criminal responsibility." *Id.* at 516.

1.  The Touchstone of the Speech or Debate Clause's Testimonial Privilege Is Prohibiting Hostile Questioning, Not Preserving Confidentiality

Throughout his motion, Ogles implies that the protections of the Speech or Debate Clause are grounded in confidentiality. *See* Mot. 2 (stating the Subject Devices contain "confidential debate among dozens of Representatives about who should lead the House as Speaker"); *id.* at 3 (expressing concern about Executive Branch review of "confidential communications"); *id.* at 5 (claiming the Subject Devices contain "confidential communications with Members of Congress and staff"); *id.* at 12 (asserting that "the open exchange of views between Members would be

chilled if Executive officials were allowed to review their correspondence"); *id.* at 15–16 (arguing that Executive review of confidential legislative materials would "chill the frank exchange of views between Members"). He is wrong.

The text of the Clause, limited to speech or debate in either House, describes activities that are generally public in nature. The history of the Clause explains the textual focus on public debate. The Clause's "taproots [lie] in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries," during which the Crown prosecuted Members of Parliament "for 'seditious' speeches." *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951). As a result, the Clause protects public, non-confidential activities, such as floor debates, committee hearings, votes, and the drafting of bills and committee reports. *See Gravel*, 408 U.S. at 624; *Doe*, 412 U.S. at 311–13. These public acts and statements are matters that the Executive Branch—along with the general public—is free to review without violating the Clause, but it may not use them against a Member in a criminal or civil case.

The Speech or Debate privilege is unlike others, such as attorney-client privilege—the purpose of which is to "prevent disclosures which would tend to inhibit the development of socially desirable confidential relationships." *In re Grand Jury Investigation*, 587 F.2d at 596. To the contrary, the Speech or Debate privilege is "not designed to encourage confidences by maintaining secrecy, for the legislative process in a democracy has only a limited toleration for secrecy." *Id*. at 597; *see also Renzi*, 651 F.3d at 1036 ("precluding review of any documentary 'legislative act' evidence, even as part of an investigation into unprotected activity, for fear of distracting Members, [would] only harm legislative independence" (citing *Brewster*, 408 U.S. at 524–25)). Rather, the purpose of the privilege is "protecting the legislator and those intimately associated with him in the legislative process from the harassment of hostile questioning." *In re Grand Jury*

*Investigation*, 587 F.2d at 597; *see Renzi*, 651 F.3d at 1036 (analyzing Supreme Court precedent indicating that "an underlying *action* must be precluded before concern for distraction alone is sufficient to foreclose inquiry" (emphasis added)). As a result, the Speech or Debate Clause "does not prohibit disclosure of . . . privileged documents to the Government" but instead "merely prohibits the evidentiary submission and use of those documents." *In re Search of Elec. Commc'ns in the Acct. of chakafattah@gmail.com at Internet Serv. Provider Google, Inc.*, 802 F.3d 516, 529 (3d Cir. 2015) ("*Fattah*") (warrant to search Member's Gmail account); *Renzi*, 651 F.3d at 1039.

Unlike confidentiality-based privileges, the Clause's protection of legislative materials or actions applies regardless of whether a Member has attempted to maintain their confidentiality. As Judge Henderson explained in her concurring opinion in *Rayburn*, she disagreed "with the majority's reasoning and distance[d] [her]self from much of its dicta," because "what the Clause promotes is the Member's ability to be open in debate—free from interference or restriction— rather than any secrecy right." 497 F.3d at 667, 670 (Henderson, J., concurring in the judgment denying a Member's Rule 41(g) motion). Neither the text nor the history of the Clause supports Ogles's inference that the Speech or Debate Clause provides disparate protection for two classes of legislative acts, those conducted in public and those conducted under a cloak of secrecy.

2.  Execution of a Search Warrant Does Not Involve Testimony or Questioning of a Member

Ogles locates the purported non-disclosure privilege within the "testimonial" component of the Clause. *See* Mot. at 12–13. However, the execution of a search warrant by law enforcement agents does not result in "testimony" by the target of the search. Indeed, Ogles was not present when the first search warrant was served on Google, a third-party email provider. He was not even aware of its existence until the government disclosed it to him a month later. Executing a search warrant requires no questioning and demands no testimony. *See Andresen v. Maryland*, 427 U.S.

463, 474 (1976) ("[T]he individual against whom [a] search is directed is not required to aid in the discovery, production, or authentication of incriminating evidence."); *see Rayburn*, 497 F.3d at 669 (Henderson, J., concurring in judgment) (execution of a search warrant is not "question[ing]" because it does "not require the [target] to do anything" (internal quotation marks omitted)).

The same principle distinguishes the numerous cases that Ogles invokes that addressed the issuance of subpoenas to Executive or Legislative officials, mostly in the civil context. *See* Mot. 3 (citing *Trump v. Mazars USA, LLP*, 591 U.S. 848, 868 (2020)); *id.* at 13 (*citing Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 418 (D.C. Cir. 1995)); *id.* at 14 (citing *Sec. & Exch. Comm'n v. Comm. on Ways & Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 242 (S.D.N.Y. 2015)); *see also id.* at 27–28 (citing eight cases involving subpoenas, depositions, or disciplinary proceedings). Unlike a search warrant, "the very disclosure of documentary evidence in response to a subpoena duces tecum may have some testimonial import." *Renzi*, 651 F.3d at 1037 n.28. "Answering a civil subpoena requires the individual subpoenaed to affirmatively act; he either produces the testimony/documents sought or challenges the subpoena's validity." *Rayburn*, 497 F.3d at 669 (Henderson, J., concurring in judgment). "In contrast, a search warrant requires that the individual whose property is to be searched do nothing affirmative." *Id.*; *cf. Johnson v. United States*, 228 U.S. 457, 458 (1913) (under Fifth Amendment "[a] party is privileged from producing the evidence, but not from its production"). "As a result, [service of a search warrant] 'falls far short of the "question[ing]"' required to trigger the Clause." *Renzi*, 651 F.3d at 1037 n.28 (quoting *Rayburn,* 497 F.3d at 669 (Henderson, J., concurring in judgment)).

Even if a search warrant could implicate the Speech or Debate Clause, the Supreme Court has emphasized that the Clause extends beyond "speech or debate in either House . . . only when necessary to prevent *indirect impairment* of [legislative] deliberations." *Gravel*, 408 U.S. at 625

(emphasis added; internal quotation marks omitted). "Concern for distraction alone cannot bar disclosure and review when it takes place as part of an investigation into otherwise unprotected activity." *Renzi*, 651 F.3d at 1037. "The [Supreme] Court's own jurisprudence demonstrates that Members have been distracted by investigations and litigation—and have even been compelled to disclose documentary 'legislative act' evidence—in cases in which the underlying action was *not* precluded by the Clause." *Id.* at 1036–37 (citing *Helstoski*, 442 U.S. at 480–81, 488 n.7; *Johnson*, 383 U.S. at 173–77; *Gravel*, 408 U.S. at 629 n.18). Thus, the execution of a search warrant by Executive Branch law enforcement agents seeking non-legislative materials does not impermissibly impair legislative deliberations.

Indeed, Ogles does not claim that any of his legislative activities were impaired by execution of the search warrants for the Subject Devices, other than one unsupported, conclusory statement that his congressional "business was interrupted on August 2, 2024" when FBI agents "seized his cell phone and the contents of his email account." Mot. 1–2. That vague assertion is not credible. Ogles was not even aware that the government had obtained a copy of his personal Google account from a third-party provider until a month later, when this Court authorized the government to inform Ogles of the existence of the warrant. Nor does Ogles's claim of interruption square with his voluntary statement to agents that he possesses one or more other electronic devices that he uses for official purposes as a Member of Congress. In his motion, Ogles does not divulge whether, upon being sworn into office, the House chamber issued him an official mobile device and an official email account to conduct House business. He does not explain why, if he has been issued these official means of correspondence, his Personal Devices "are both locations where communications by Members about legislative acts are inevitably found," Mot. 11, even if under House rules he is "permit[ted]" to use his personal device to conduct House business, Mot. 25.

Ogles relies almost entirely on the D.C. Circuit's divided opinion in *Rayburn*, in which a two-judge majority held "that a search that allows agents of the Executive to review privileged materials without the Member's consent violates the [Speech or Debate] Clause." 497 F.3d at 663. *But see id.* at 666–73 (Henderson, J., concurring in judgment). In *Rayburn*, the Government executed a warrant to search a Member's congressional office within the Rayburn House Office Building. Agents reviewed paper documents in the office and seized two boxes of responsive documents. *Id.* at 657. Agents also copied computer hard drives in the office, without reviewing their contents, so that they could later be searched offsite. *Id.* The court of appeals concluded that the search of the documents in the congressional office violated the Constitution because "[i]n order to determine whether the documents were responsive to the search warrant, FBI agents had to review all of the papers in the Congressman's office, of which some surely related to legislative acts." *Id.* at 661. The *Rayburn* court stated that the government may search a congressional office only if it first provides the Member with an "opportunity to identify and assert the privilege with respect to legislative materials before their compelled disclosure to Executive agents." *Id.* at 662. The court found no constitutional violation with respect to the copying of the computer hard drives, however, because no Executive agent had seen the contents of any of the files on those drives. The court explained that its remand order—which established a process to first turn over the records to the Congressman, then allow him to claim that specific records were protected, and then to require the district court to review *in camera* any specified records to determine whether they were protected—"afford[ed] the Congressman an opportunity to assert the privilege prior to disclosure of privileged materials [on the hard drives] to the Executive." *Id.* at 663.[3]

---

[3] Ogles also invokes the D.C. Circuit's decision in *In re Sealed Case*, 80 F.4th 355 (2023) ("*Perry*"), which addressed whether certain communications located on a Member's personal cell phone constituted legislative acts protected by the Speech or Debate Clause. *Id.* at 359. However, the *Perry* panel did not revisit whether *Rayburn*'s holding that the Speech or Debate Clause

Acknowledging that no decision of the Supreme Court had recognized a non-disclosure privilege, the *Rayburn* court purported to ground its holding in circuit law that addressed a subpoena seeking legislative documents. *Rayburn*, 497 F.3d at 659–60 (citing *Brown & Williamson*, 62 F.3d 408). Although *Rayburn* involved a search warrant in a criminal investigation, not a subpoena in a civil action, the court subsumed its non-disclosure rule in the "testimonial privilege under the Speech or Debate Clause," despite acknowledging that "a seizure of documents did not involve a testimonial element." *Id.* at 661.

Judge Henderson concurred in the judgment to the extent that it "affirm[ed] the district court's denial of [the Rule 41] motion," *id.* at 667, but she disagreed with the majority's finding of a constitutional violation. *Id.* at 666–73. Judge Henderson explained that a search does not constitute "questioning" within the meaning of the Clause because it does not require a Member "to do anything." *Id.* at 669. Considering that "what the Clause promotes is the Member's ability to be open in debate—free from interference or restriction—rather than any secrecy right," Judge Henderson concluded that "it is the Executive Branch's evidentiary use of legislative acts, rather than its exposure to that evidence, that violates the Clause." *Id.* at 670, 672 n.12. The majority's contrary holding, Judge Henderson explained, "would jeopardize law enforcement tools that have never been considered problematic," including searches of Members' homes or cars, as well as surveillance of Members or staffers. *Id.* at 671–72 (citation and internal quotation marks omitted).

The Third and Ninth Circuits have likewise rejected the *Rayburn* majority's conclusion, recognizing that, pursuant to a criminal investigation, the Executive may obtain records—pursuant

---

incorporates a non-disclosure privilege was correctly decided. Before the district court, the parties were required to apply *Rayburn* and its *ex parte* filter protocol as binding precedent, despite the government's longstanding position that such a protocol is constitutionally infirm and that *Rayburn* was wrongly decided. *Perry's* holding also did not address whether a third-party held account, such as the Google account seized in this case—would be subject to the protocols outlined in *Rayburn*.

to a warrant or otherwise—and review those records regardless of whether the records contain material protected by the Speech or Debate Clause, although the government cannot use protected material to obtain an indictment or a conviction at trial. *See Renzi*, 651 F.3d at 1032 (rejecting the contention "that there exists some grandiose, yet apparently shy, privilege of non-disclosure that the Supreme Court has not thought fit to recognize"); *In re Grand Jury Investigation*, 587 F.2d at 597 ("the privilege . . . is one of nonevidentiary use, not of non-disclosure"); *see also Fattah*, 802 F.3d at 529 ("while the Speech or Debate Clause prohibits hostile questioning regarding legislative acts in the form of testimony to a jury, it does not prohibit disclosure of Speech or Debate Clause privileged documents to the Government"). As described above and in the cited decisions of the Third and Ninth Circuits, the *Rayburn* majority's rationales do not justify extending the protections of the Clause beyond its text and central purpose.

The government is prohibited from charging a Member or staffer based on protected legislative activity and from presenting any evidence of protected legislative acts to a grand or petit jury. The additional non-disclosure privilege adopted in *Rayburn* is not necessary to protect legislative independence. On the other hand, as addressed in more detail below, adhering to *Rayburn* would effectively prevent any covert investigation of a congressional member or staffer for any criminal activity. *See Brewster*, 408 U.S. at 526 ("Admittedly, the Speech or Debate Clause must be read broadly to effectuate its purpose of protecting the independence of the Legislative Branch, but no more than the statutes we apply, was its purpose to make Members of Congress super-citizens, immune from criminal responsibility."). Like the Ninth and Third Circuits, this Court should "cling to 'the precise words' of the [Supreme] Court's own Speech or Debate jurisprudence and 'the sense of those cases, fairly read,'" and not limit the disclosure of the information. *Renzi*, 651 F.3d at 1016 (quoting *Brewster*, 408 U.S. at 516).

### 3. Ogles's Unsupported Attacks on the Government Lack Merit

Unable to refute the reasoning of these Supreme Court cases and the decisions in the Ninth and Third Circuits based on text, purpose, or history, Ogles repeatedly insinuates that the search warrants in this matter are the result of politically motivated bias against him. Mot. 6–7, 19–20; *see also Tennessee Star* (Ogles asserting that "the Biden/Harris FBI took possession of my cell phone and email account"). Ogles claims that, absent a non-disclosure privilege, "there would be nothing to stop determined Executive Branch officials from undermining Congressional independence by seizing and then examining the legislative communications of Members under the guise of search warrants directed at wrongdoing by third parties or at alleged crimes that did not occur." Mot. 19. Setting aside Ogles's unsupported and baseless allegations of politically motivated bias, he discounts that a warrant cannot issue except on a showing of probable cause to a neutral and detached judicial officer that a particular device contains evidence of crime. He also ignores the limitations set forth in Attachment B, which identify the material the government is authorized to seize and confirm the focus of the government's investigation is unrelated to his legislative acts.

Any chill that may result from the possibility of warrant-authorized criminal investigations does not rise to the level of "realistic[]" impairment that the Supreme Court has required for extending the Speech or Debate Clause beyond pure speech or debate in either House. *Gravel*, 408 U.S. at 618. In fact, the Supreme Court rejected a similar argument in the context of Executive privilege: "[W]e cannot conclude that advisers will be moved to temper the candor of their remarks by the infrequent occasions of disclosure because of the possibility that such conversations will be called for in the context of a criminal prosecution." *United States v. Nixon*, 418 U.S. 683, 712 (1974); *cf. Zurcher v. Stanford Daily*, 436 U.S. 547, 565–66 (1978) (holding that execution of

search warrant on newspaper would not unconstitutionally chill exercise of First Amendment rights).

Ogles's complaints about being required to litigate this issue in this Court, rather than his preferred venue of the District of Columbia, ring even more hollow. He asserts that "the Executive Branch sought warrants outside of the District of Columbia only for strategic purposes: forum shopping at its worst." Mot. 22. This argument is disingenuous. Ogles ignores that he campaigned for office here in the Middle District of Tennessee, that his campaign headquarters is based in the Middle District of Tennessee, that he is now the Representative of a congressional district that lies within the Middle District of Tennessee, that he lives in the Middle District of Tennessee, and that this criminal investigation is being conducted out of the U.S. Attorney's Office for the Middle District of Tennessee. His allegation of forum shopping is especially brazen considering his counsel delayed initiating litigation in this Court for weeks while they attempted to manufacture a way to file suit in the District of Columbia, in the hopes of availing Ogles of "the only case that has ever held that the Clause goes so far as to preclude the Executive from obtaining and reviewing 'legislative act' evidence: the decision of the D.C. Circuit Court of Appeals in *Rayburn*." *Renzi*, 651 F.3d at 1033 (citation omitted).

**B.     Requiring a "Speech or Debate Protocol" Before the Government Reviews the Subject Devices Would Make Criminal Investigations of Members of Congress Effectively Infeasible**

Ogles argues that federal criminal investigators should "follow[] the *Rayburn* procedure in every case involving a search warrant directed at a Member of Congress and allow[] the Member to remove materials." Mot. 23. Mandating such a process would effectively make a Member's electronic device, as well as any other place in which legislative materials might be found, "a sanctuary for crime." *Brewster*, 408 U.S. at 521 (quoting *Williamson*, 207 U.S. at 439). Ogles's

preferred approach would mean that law enforcement agents would have to depend on the target of a search, perhaps assisted by others, to segregate documents he views as privileged from those he views as unprivileged, with a court then making *ex parte* privilege determinations, before the government could conduct the search. That procedure ignores separation of powers concerns and practical realities concerning the risk of destruction of evidence, and introduces intractable practical problems.

To the extent that Ogles contemplates that non-Executive Branch officials would conduct the search or oversee it, he overlooks the Supreme Court's recognition that executing a search warrant is a quintessentially "executive" function. *United States v. Grubbs*, 547 U.S. 90, 98 (2006) (internal quotation marks omitted); *see Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 327–28 (1979) (a "search party [is] essentially a police operation"; magistrate's participation in a search was improper because it blurred the line between the judicial role and the police officer's conduct of "the executive seizure"); Fed. R. Crim. P. 41 (demanding various tasks of "[t]he officer executing the warrant," and defining "officer" as "a government agent . . . engaged in enforcing the criminal laws"); *Rayburn*, 497 F.3d at 668 (Henderson, J., concurring in judgment) (citing *Grubbs*). To protect the integrity of evidence seized during a search and to conduct the search at all, executing agents—not the target of the search or any non-executive official—must exercise "unquestioned command of the situation." *Michigan v. Summers*, 452 U.S. 692, 702–03 (1981).

Moreover, Ogles does not explain why, under his interpretation of the Speech or Debate Clause, it would be permissible for the Judiciary to review legislative act evidence where the Executive could not. He ignores that the Clause "applies in equal scope and with equal strength to both the Executive and the Judiciary." *Renzi*, 651 F.3d at 1038 (citing *Johnson*, 383 U.S. at 178–79); *see Gravel*, 408 U.S. at 624–25 (identifying the Clause's purpose as "prevent[ing]

intimidation of legislators by the Executive and accountability before a possibly hostile judiciary"). "If the Clause applies, it applies absolutely—there is no balancing of interests nor any lessening of the protection afforded depending on the branch that perpetrates the intrusion." *Renzi*, 651 F.3d at 1038 (citing *Eastland*, 421 U.S. at 509 & n.16). "If disclosure to the Executive violates the privilege, then disclosure to the Judiciary does no different; the Clause does not distinguish between judge, jury, and prosecutor." *Id.* Thus, "the very fact that the [Supreme] Court has reviewed 'legislative act' evidence on countless occasions—and considered cases in which such evidence had been disclosed to the Executive with nary an eyebrow raised as to the disclosure—demonstrates that the Clause does not incorporate a non-disclosure privilege as to any branch." *Id.* at 1039.

Ogles argues that a Member's non-disclosure privilege applies to the search of any "'location where legislative materials are inevitably found.'" Mot. 24 (quoting *Perry*, 80 F.4th at 366 n.6). In *Perry*, the D.C. Circuit ruled that a "Member's cell phone is realistically such a location," 80 F.4th at 366 n.6, under an unprecedented interpretation of what constitutes a legislative act to potentially include "[s]ome acts of informal factfinding." *Id.* at 359. Under this flawed conception of the Speech or Debate Clause, many traditional searches of Members' property would likely be unconstitutional. *See Rayburn*, 497 F.3d at 671–72 (Henderson, J., concurring in judgment) ("Carried to its logical conclusion, this argument would require a Member of Congress to be given advance notice of any search of his property, including . . . his home or car, and further that he be allowed to remove any material he deemed to be covered by the legislative privilege prior to a search." (citation and internal quotation marks omitted)). If such a "sweeping reading" were permitted, it would effectively immunize members of Congress from criminal liability because "there are few activities in which a legislator engages that he would be

unable somehow to 'relate' to the legislative process." *Brewster*, 408 U.S. at 516.  As a result, a non-disclosure privilege would prevent any covert investigation of a congressional member or staffer for any criminal activity.  This would violate the Supreme Court's warning that the purpose of the Speech or Debate Clause is not "to make Members of Congress super-citizens, immune from criminal responsibility." *Id.*

The course of the instant investigation—particularly with respect to the seizure of Ogles's personal email account from Google—underscores the damage a non-disclosure privilege would do to covert criminal investigations.  Ogles was not aware that the government had obtained a copy of his personal Google account pursuant to a warrant served on Google, a third-party provider.  However, rather than follow normal practice and begin review of the contents of the account pursuant to the court-authorized procedures set forth in Attachment B, the government exercised caution and informed Ogles of the existence of the warrant so that this Court could resolve the open question regarding the reach of the Speech or Debate Clause.  Despite the government's consistent, repeated requests to keep the existence of the email warrant under seal, Ogles filed his motions on the public docket without notifying this Court of the government's objection to an unsealed filing.  Soon after counsel filed the instant motion, Ogles gave an interview highlighting the existence of the previously sealed warrant for the media.  Any other potential subject of the investigation is now able to learn of the existence of what would have been lawful, covert legal process.  This is just one example of the ways that a non-disclosure privilege would significantly impair criminal investigations involving Members, which are a vital means of protecting the integrity of our government.[4]

---

[4] As another example, a non-disclosure privilege would deter prosecutors from using other common investigative techniques—such as wiretaps—for fear that those techniques will be held invalid, and that defendants will then argue that the entire investigation or prosecution was tainted. Law enforcement agents would be placed on the horns of a dilemma.  They could choose not to

Ogles claims that "prosecutors can easily follow" his recommended non-disclosure protocol. Mot. 17. In reality, what Ogles "asks is no small request." *Renzi*, 651 F.3d at 1032. The application of a non-disclosure protocol within the D.C. Circuit has shown the wholly impractical burdens it places on the courts and the government. In *Rayburn*, more than a year and a half after the D.C. Circuit mandated *ex parte* review, the district court still had not issued any findings on any of the documents that the Member had claimed to be privileged, apparently because of the sheer volume of privilege claims and the difficulty in reviewing such claims without open adversarial guidance. Gov't Cert. Pet., *United States v. Rayburn House Off. Bldg.*, No. 07-816 (filed Dec. 19, 2007), *available at* https://www.justice.gov/osg/brief/united-states-v-rayburn-house-office-bldg-room-213-petition.

Likewise, in *Perry*, despite an "expedited" process, 80 F.4th at 360, more than a year passed between when the search warrant for the Member's phone was executed and when the D.C. Circuit resolved disputes over how to categorize legislative materials, *id.* at 355, 360, leaving the district court with yet more filter work to perform. *Id.* at 371, 373. In the interim: (1) the Member filed a motion in district court claiming more than 2,000 communications were privileged, *id.* at 360; (2) following *in camera* review, the district court ordered disclosure of all but 164 of them, *id.*; (3) the Member appealed, resulting in a stay of the district court's disclosures to the government, *id.* at 361; and (4) the D.C. Circuit affirmed some of the district court's privilege determinations, reversed others, and instructed the court to reevaluate them "on a communication-by-communication basis" under a new standard that it established for defining legislative materials, *id.* at 371, 373.

---

pursue potentially important evidence of public corruption, and thereby risk letting serious crimes go unpunished. Or they could pursue the evidence and risk losing an important public corruption case in the event that a court later holds that the investigation was tainted by a search that would have previously been considered uncontroversial.

These cases show that timely judicial review of a Member's privilege assertions would be virtually impossible, in part because *ex parte* review places significant "burdens . . . upon the district courts," requiring them "to evaluate large evidentiary records without open adversarial guidance." *United States v. Zolin*, 491 U.S. 554, 571 (1989). This delay exists, and is inherent in any application of a non-disclosure privilege, even if, on review, the Court were to conclude that none of the Subject Devices contain legislative materials. Such significant delays seriously hamper criminal investigations, especially with statutes of limitations running. *Cf. Flanagan v. United States*, 465 U.S. 259, 264 (1984) (explaining that passage of time prejudices criminal prosecutions).

Finally, the search warrants for the Subject Devices permit the government to seize relevant evidence from January 1, 2022, through the date of the warrant. Prior to being sworn into office on or about January 3, 2023, Ogles was not a Member of Congress, and thus no privilege can attach to any materials from this twelve-month period of time. Ogles appears to concede as much, identifying the start of his "term in office" as the "period when the legislative privilege attaches to the *entirety* of his 'legislative acts.'" Mot. 18. Ogles also states that he seeks "the return of privileged legislative materials," but "[h]e does not seek the return of any other data." *Id.* at 2; *see id.* at 23 ("Congressman Ogles does not maintain that the Speech or Debate Clause protects unprivileged evidence or unprivileged criminal conduct."). Nonetheless, Ogles maintains that "[i]f the Court determines that *any* of the contents of the phone and email are legislative materials, Congressman Ogles is entitled to review and remove those materials before Executive Branch officials access the non-privileged material." *Id.* at 24. That makes little sense, even under Ogles's own erroneous interpretation of the Speech or Debate Clause.

There exists no Speech or Debate principle that would prohibit the government from

lawfully reviewing evidence from Ogles that pertains to the time before he became a Member of Congress. Not even *Rayburn* required the return of unprivileged materials to the Member. *See Rayburn*, 497 F.3d at 665 (denying the Member's Rule 41(g) motion as it pertained to non-privileged materials seized during the search of his congressional office). As a result, this Court should immediately authorize the government to review at least the information on the Subject Devices from the time period of January 1, 2022, through January 2, 2023—the day before Ogles became a Member—even if the Court requires more time to resolve the Speech or Debate issues as they pertain to materials generated after that date.

## CONCLUSION

For these reasons, the government respectfully requests that this Court deny Ogles's motions for return of property and permit the government to review the Subject Devices without any restrictions beyond the limits provided by the warrant itself.


Respectfully submitted,

HENRY C. LEVENTIS                           COREY R. AMUNDSON
United States Attorney                       Chief
Middle District of Tennessee                 Public Integrity Section

By:                                          By:


/s/ Chris Suedekum                           /s/ John P. Taddei
ROBERT S. LEVINE                             JOHN P. TADDEI
CHRIS SUEDEKUM                               Trial Attorney
Assistant U.S. Attorneys                     1301 New York Ave. NW
719 Church Street, Suite 330                 Washington, DC 20530
Nashville, Tennessee 37203                   (202) 514-1412
Phone: (615) 736-5151

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 11, 2024, I filed a copy of the foregoing motion using the Court's CM/ECF system, which will send a notice of filing to all counsel of record.

/s/ Chris Suedekum
Chris Suedekum
Assistant United States Attorney