IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNT W************1@GMAIL.COM THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC<br><br>IN THE MATTER OF SEARCH OF A WIRELESS TELEPHONE ASSIGNED TELEPHONE NUMBER (615) ***-**** BELIEVED TO BE USED BY WILLIAM ANDREW OGLES | Case Nos. 3:24-mj-04250<br>3:24-mj-04276 |

**SCRIPPS MEDIA, INC.'S RESPONSE TO REPRESENTATIVE OGLES' EMERGENCY MOTION TO RESTORE THE SEAL ON THE SEARCH WARRANT MATERIALS PENDING RESOLUTION OF HIS OBJECTIONS**

The cat is out of the bag and Representative Ogles' objections to release of the requested search warrants are moot. As such, the Court should deny Representative Ogles' Emergency Motion to Restore the Seal on the Search Warrant Materials Pending Resolution of his Objections, Dkt. 47.[1]

## Introduction and Relevant Background

On Friday, October 2, 2026, Magistrate Judge Evans issued an order in the above-captioned proceedings that, among other things, instructed the Clerk of Court to unseal the United States's proposed redacted copies of the search warrant materials. Dkt. 43 at 2. On that same day, the Clerk of Court complied with Magistrate Judge Evans' order and released the redacted version of the search warrant materials previously proposed by the United States, on PACER. Dkt. 44. At

[1] The Docket Number references are to Case No. 3:24-mj-04276, but this is being filed in both cases noted in the caption.

the time the redacted search warrant materials were released, District Judge Campbell had been assigned to the case.

Also on October 2, 2026, within approximately 30 minutes of the release of the redacted search warrant materials, undersigned counsel for Scripps Media emailed counsel for Representative Ogles and for the United States to alert them to the apparent release of the search warrant records and notified them that undersigned had not alerted Scripps Media in an abundance of caution in case the release was an error. Ex. 1. Approximately 17 hours later, on the morning of October 3, 2026, counsel for Representative Ogles emailed Judge Campbell's staff about the issue. Dkt. 47-1. In the afternoon of October 3, 2026, Judge Campbell recused himself from the case, Dkt. 45, and later that afternoon, Judge Trauger also recused herself, Dkt. 46. Following District Judge Trauger's recusal, Representative Ogles' Emergency Motion was filed, Dkt. 47. The Court has since temporarily granted Representative Ogles' Emergency Motion pending further orders from the Court. Dkt. 48.

There are at least four facts since the release of the records that support denial of Representative Ogles' Emergency Motion as moot.

First, the records which Representative Ogles seeks to reseal were accessible to the public for more than 24 hours and the First Amendment protects the public's right to access filings placed on the public docket in this case—whether inadvertently or not. Second, on Friday, October 2, 2026, Kyle Cheney, a Senior Legal Affairs Reporter with Politico, posted about the release of the records on the X social media platform. Ex. 2. According to the statistics visible on the post as of 9:41 p.m. on October 3, 2026, Mr. Cheney's post has already been viewed more than 20,000 times and reposted 155 times by other users. *Id.* His post also included a link to the website, CourtListener, where Document 45-1 in Case No. 3:24-mj-04250 is posted:

https://storage.courtlistener.com/recap/gov.uscourts.tnmd.100213/gov.uscourts.tnmd.100213.45.1_1.pdf. Ex. 2.

Third, CourtListener not only published the document that Mr. Cheney posted on X, but it also has also published all the judicial records released in that case. Ex. 3. In other words, for a fee, the redacted search warrant materials in Case No. 3:24-mj-04250 continue to be available to anyone who wants to download them from that platform, even though the records have been resealed.

Finally, after Judge Campbell's recusal on October 3 but before Representative Ogles' Emergency Motion, the undersigned provided the redacted search warrant materials to his clients, consistent with Tennessee Rule of Professional Conduct 1.4(a)(3), "to keep the client reasonably informed about the status of the matter." Counsel for Scripps Media waited approximately 23 hours after the Court's release of the redacted search warrant materials before doing so and only after informing counsel for Representative Ogles about the issue and after no action by the Court other than Judge Campbell's recusal. At this point, Scripps Media has chosen to not publish a story on the redacted search warrant materials that were publicly released, but should not be penalized while other individuals and news outlets report their contents simply because it sought their release.

These are the public releases of the redacted search warrant materials that Scripps Media knows about. The Court may be able to tell even more about how many members of the public have accessed the redacted search warrant materials through PACER.

## Argument

**I. Representative Ogles' Emergency Motion is moot because the redacted search warrant materials are public.**

"The test for mootness 'is whether the relief sought would, if granted, make a difference to the legal interests of the parties....'" *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc). Where court records are unsealed and made public, a request to re-seal the records is moot. *See, e.g.*, *Constand v. Cosby*, 833 F.3d 405, 410 (3d Cir. 2016) ("We and our sister circuit courts have held that appeals seeking to restrain 'further dissemination of publicly disclosed information' are moot.") (citations omitted); *see also Doe No. 1 v. Reed*, 697 F.3d 1235, 1240 (9th Cir. 2012) ("[O]nce a fact is widely available to the public, a court cannot grant any "effective relief" to a person seeking to keep that fact a secret."); *United States v. Se. Eye Specialists, PLLC*, 586 F. Supp. 3d 787, 794–95 (M.D. Tenn. 2022) (holding that request to redact affidavit partially discussed at oral argument for which a transcript had been publicly available for an extended period was moot because "that bell cannot now be unrung") (citations omitted).

"Secrecy is a one-way street: Once information is published, it cannot be made secret again." *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008). Similarly, courts "simply do not have the power, even were [they] of the mind to use it if [they] had, to make what has thus become public private again." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004); *see also id.* ("The genie is out of the bottle, albeit because of what we consider to be the district court's error. We have not the means to put the genie back."); *Maness v. Meyers*, 419 U.S. 449, 460 (1975) ("[C]ourts cannot always 'unring the bell' once the information has been released."); *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 448 (5th Cir. 2019) ("[A] decision to unseal a document cannot be undone; once confidential information is released, there

is no going back."); *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 834 (9th Cir. 2014) ("[O]nce a fact is widely available to the public, a court cannot grant 'effective relief' to a person seeking to keep that fact a secret.") (citation omitted). *Victory Sports & Entm't, LLC v. Pedraza*, No. 219CV00826APGNJK, 2019 WL 2578767, at *2 (D. Nev. June 24, 2019) ("A request to seal information that was publicly disclosed involves 'an inherent logical dilemma' in that 'information that has already entered the public domain cannot in any meaningful way be later removed from the public domain.'") (citations omitted).

It is also important to note that the media cannot be punished for publishing truthful information about a matter of public concern that it lawfully acquired, including by inadvertent release. *See Fla. Star v. B.J.F.*, 491 U.S. 524, 532 (1989) (holding that the State's asserted interest in protecting the anonymity of a juvenile offender was insufficient to overcome newspaper's First Amendment right to publish the juvenile's name where information was erroneously released); *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 103 (1979) ("[I]f a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order."); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 491 (1975) ("[W]hether the State may impose sanctions on the accurate publication of the name of a rape victim obtained from public records—more specifically, from judicial records which are maintained in connection with a public prosecution and which themselves are open to public inspection. We are convinced that the State may not do so.").

Finally, the lone case Representative Ogles cites is distinguishable. Representative Ogles argues that "a court that cannot undo a disclosure can still limit it." Dkt. 47 at 3 (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12-13 (1992)). Critically, the *Church of*

*Scientology* case did not involve a situation, like here, where the records at issue had already been made public. The issue in that case was possession of specific copies of tape recordings by a federal government agency (the IRS); the plaintiff sued for the return of those copies. 506 U.S. at 11-13. The Supreme Court there held that "a court can effectuate relief by ordering the Government to return the records," explaining:

> Even though it is now too late to prevent, or to provide a fully satisfactory remedy for, the invasion of privacy that occurred when the IRS obtained the information on the tapes, a court does have power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession.

*Id*. at 13.

Suffice to say, the Court's power to order a government agency to return property to a litigant has no bearing on the ability to claw back information that has entered the public sphere. Here, at least some, if not all, of the records are already public, have been reported on by the press, and are available on the internet. As a result, *Church of Scientology* is distinguishable and inapplicable.

In sum, because it is not possible to make "unpublic" what has already been openly disclosed to the public, Representative Ogles' Emergency Motion to reseal the records at issue should be denied as moot.

**CONCLUSION**

For the foregoing reasons, this Court should deny Representative Ogles' Emergency Motion and restore PACER access to the redacted search warrant materials.

Respectfully submitted,

*/s/ Paul R. McAdoo*
Paul R. McAdoo (BPR No. 034066)
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
6688 Nolensville Rd., Suite 108-20

Brentwood, TN 37027
Phone: 615.823.3633
Facsimile: 202.795.9310

*Counsel for Scripps Media, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on October 3, 2026, the foregoing was served upon counsel for the United States and U.S. Representative William Andrew Ogles through the CM/ECF system.

*/s/ Paul R. McAdoo*
Paul R. McAdoo (BPR No. 034066)

*Counsel for Scripps Media, Inc.*