**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| IN THE MATTER OF SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNT W************1@GMAIL.COM THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC<br><br>IN THE MATTER OF SEARCH OF A WIRELESS TELEPHONE ASSIGNED TELEPHONE NUMBER (615) ***-**** BELIEVED TO BE USED BY WILLIAM ANDREW OGLES | Case Nos. 3:24-mj-04250<br>3:24-mj-04276 |

**MEMORANDUM OF LAW IN SUPPORT OF SCRIPPS MEDIA, INC.'S OBJECTIONS TO MAGISTRATE JUDGE'S OCTOBER 2, 2026 ORDER**

Scripps Media, Inc. ("Scripps"), respectfully submits these objections to Magistrate Judge Evans's October 2, 2026 Memorandum Order (the "October 2 Order"), Dkt No. 43,[1] adopting the Government's proposed redactions to the court records that Scripps has moved to unseal: affidavits submitted by federal investigators in support of two warrants that authorized the search and seizure of the personal cell phone and email account of Congressman Andy Ogles in the above captioned cases. Magistrate Judge Evans had previously granted in part Scripps' motion to unseal those records on September 4, 2026 (the "September 4 Order"), but solicited proposed redactions to the documents from the Government. Dkt. No. 43. Scripps objects to the October 2 Order in so far as it adopted the Government's redactions to paragraphs 10, 22–23, 25–26, 28, 30, and 33–44 of the affidavit field at Dkt. No. 44-1 in case number 3:24-mj-04726. Scripps also objects to the

1 Unless otherwise indicated, the Docket Number references herein are to Case No. 3:24-mj-04276. This opposition is being filed in both cases noted in the caption.

October 2 Order in so far as it adopted the Government's redactions to paragraphs 12, 24–25, 27–28, 30, 32, 35, and 38–49 of the affidavit filed at Dkt. No. 45-1 in case number 3:24-mj-04250.

The common law affords the public a qualified "right to inspect and copy public records and documents, including judicial records and documents." *United States v. Beckham*, 789 F.2d 401, 409 (6th Cir. 1986) (citing *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597 (1978)). The Sixth Circuit—like the many other federal circuit courts of appeal throughout the country—recognizes that "the common law right of access to judicial documents may in some situations permit access to search warrant proceedings" where "the public's right to know outweighs interests of privacy in sealing a particular document." *In re Search of Fair Fin.*, 692 F.3d 424, 433 (6th Cir. 2012); *accord Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65 (4th Cir. 1989) (recognizing "the common law qualified right of access to the warrant papers"); *United States v. Sealed Search Warrants*, 868 F.3d 385, 396 (5th Cir. 2017) (extending "the common law qualified right of access to judicial records to situations involving an individual's request to access pre-indictment warrant materials"); *Matter of Search of 1638 E. 2nd St., Tulsa, Okl.*, 993 F.2d 773, 775 (10th Cir. 1993) (agreeing "affidavits for search warrants are judicial records" subject to common law right of access); *In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 297 (D.C. Cir. 2022) (recognizing common law right of access applies to "search warrant materials"); *see also United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1192 (9th Cir. 2011) (common law right of access only attaches "after an investigation has ended"). The public has a powerful interest in accessing the portions of the warrant affidavits that have been redacted because they reflect the Government's factual basis for believing that probable cause existed to seize the property of a sitting U.S. Congressman would reveal evidence of a federal crime. That public interest outweighs any secrecy interest in withholding the redacted portions. In the September 4 Order, the Magistrate

Judge correctly ruled that this right of access attaches to the warrant affidavits and granted Scripps' motion in part. But the redactions adopted by the Magistrate Judge's October 2 Order are inadequately supported and substantively improper.

For the reasons herein, and for the reasons previously explained in Scripps's Motion to Intervene and Unseal, Dkt. No. 26, Memorandum of Law in Support thereof, Dkt. No. 27, Reply in Further Support thereof, Dkt. No. 32, and Opposition to Congressman Ogles's Objections to the Magistrate Judge's September 4, 2026 Order, Dkt. No. 53, this Court should order the affidavits released with redactions removed from Dkt. No. 44-1 (3:24-mj-04726) ¶¶ 10, 22–23, 25–26, 28, 30, 33–44; and from Dkt. No. 45-1 (3:24-mj-04250) ¶¶ 12, 24–25, 27–28, 30, 32, 35, 38–49.

## FACTUAL BACKGROUND

The facts of this case have previously been summarized by Scripps's Memorandum of Law in Support of its Motion to Intervene and Unseal, Dkt. No. 27, and its Opposition to the Objections filed by Congressman Andy Ogles to the Magistrate Judge's September 4, 2026 Order, Dkt. No. 53, both of which Scripps incorporates by reference herein.

To briefly recite the facts as relevant to Scripps's instant Objections: two years ago, two warrants were issued by this Court authorizing the search and seizure of the personal cell phone and personal email account of Congressman Ogles. Search Warrant Issued, Dkt. No. 1, *Search of Wireless Telephone*, Case No. 3:24-mj-04276 (M.D. Tenn. July 30, 2024); Search Warrant Issued, Dkt. No. 1, *Search of Information Associated with Google Account*, Case No. 3:24-mj-04250 (M.D. Tenn. July 12, 2024). The email warrant was "directed to Google LLC," authorized the search and seizure "associated with a Google account registered to" Congressman Ogles, and was approved on July 12, 2024 (the "Email Warrant"). Dkt. No. 10 at 2. The Court "placed the warrant and associated materials under seal and ordered Google not to disclose the existence of the warrant to [Congressman] Ogles or any other person based on a finding that there was reason to believe

notification would seriously jeopardize the investigation." *Id.* at 2–3. Separately, on July 30, 2024, the Court approved a warrant that authorized the government "to seize and search Ogles's personal cell phone," which was executed on August 2, 2024 (the "Phone Warrant"). *Id.* at 3.

Shortly after the Phone Warrant was executed, Congressman Ogles publicly confirmed that his cell phone had been seized, posting on the social media platform X that federal agents were investigating "the same well-known facts" related to whether his "campaign made mistakes in our initial financial filings" as had been "widely reported for months." Congressman Andy Ogles (@AndyOgles), X (Aug. 6, 2024, at 8:15 PM), https://perma.cc/SSJ7-JAJJ. The Government then moved for authorization to disclose the existence of the Email Warrant to Congressman Ogles, which the Court granted. Dkt. Nos. 2–3 (3:24-mj-04250).

The matter remained sealed vis-à-vis the public until September 3, 2024, when Congressman Ogles publicly filed a motion for return of property, Dkt. No. 2 (3:24-mj-04276), in this Court, thereby publicly identifying the existence of both the Cell Phone and Email Warrants. *Id.* at 7 ¶¶ 17–18. The next day, this Court ordered the dockets related to both warrants unsealed but kept the "warrant[s] and all attachments" filed at Dkt. No. 1 in each respective matter sealed. Dkt. No. 4 (3:24-mj-04276); Dkt. No. 6 (No. 3:24-mj-04250). The Government subsequently represented it would not review the contents of Congressman Ogles's cell phone or email account pending a decision on his motion. Dkt. No. 17-1 at 3 ¶ 11 (3:24-mj-04276).

The matter in this Court remained pending until May 5, 2026, when Congressman Ogles withdrew his motion and represented to this Court that "the Government has advised defense counsel that it will promptly return or destroy the property and information obtained pursuant to the respective search warrants at issue." Dkt. No. 24 at 1. Shortly thereafter, Congressman Ogles announced at a press conference with other lawmakers that "this DOJ has cleared me." *Rep. Andy*

*Ogles News Conference on Justice Department Surveillance*, at 3:27–3:30, C-SPAN (May 13, 2026), https://bit.ly/45nV3s4. At the same press conference, Congressman Ogles alleged that the investigation was improperly motivated by political bias, stating the "Biden Administration was willing to intentionally violate [the Speech and Debate Clause] to punish its adversaries, to target conservatives, specifically to target Republicans." *Id.* at 1:57–2:16.

On August 13, 2026, Scripps filed a motion to intervene and unseal, seeking:

(1) The filings docketed at Dkt. No. 1 in the matter of *Search of Wireless Telephone*, 3:24-mj-04276 (M.D. Tenn. 2024), including the warrant, the Government's application, any attachments, and other associated filings; and

(2) The filings docketed at Dkt. No. 1 in the matter of *Search of Information Associated with Google Account*, No. 3:24-mj-04250 (M.D. Tenn. 2024), including the warrant, the Government's application, any attachments, and other associated filings.

(collectively, the "Warrant Materials"). Dkt. Nos. 26–27. The Government did not take a position on unsealing or file an opposition to Scripps's Motion, and instead indicated, in a meet and confer discussion with counsel for Scripps, that "it may seek to redact certain portions of the Warrant Materials in the event disclosure is ordered." Dkt. No. 26 at 2. Congressman Ogles opposed release. Dkt. No. 31. On September 4, 2026, Magistrate Judge Evans issued an order granting Scripps's motion in part but providing the Government an opportunity to propose redactions to the requested materials. Dkt. No. 33. Congressman Ogles filed objections to the Magistrate Judge's September 4 Order, Dkt. No. 35, which Scripps opposed, Dkt. No. 53.

Meanwhile, the Government submitted its proposed redactions. Dkt. No. 37. Then, on October 2, 2026, Magistrate Judge Evans issued a separate order (the "October 2 Order") which stated that "[t]he Court has reviewed *in camera* the Government's proposed redactions in each case and finds them appropriate without any changes," and directed the Clerk of Court to unseal the Government's proposed redacted copies of the Warrant Materials in each respective case. Dkt.

No. 43 (3:24-mj-04276); Dkt No. 44 (3:24-mj-04250). The Clerk of Court complied with that order and released the partially redacted Warrant Materials in each docket. Dkt. No. 44 (3:24-mj-04276); Dkt. No. 45 (3:24-mj-04250). On October 3, 2026, the Warrant Materials were provisionally resealed. Dkt. No. 48 (3:24-mj-04276); Dkt No. 49 (3:24-mj-04250). On October 9, 2026, this Court ordered the partially redacted Warrant Materials to be placed back on the public docket. Dkt. No. 52 (3:24-mj-04276); Dkt. No. 53 (3:24-mj-04250).

The partially unsealed affidavit for the Phone Warrant in case 3:24-mj-04276 included substantial redactions of information critical to the Government's probable cause showing, including two paragraphs about what information or evidence Special Agent Brent A. Hayden had "reviewed," Dkt. No. 44-1 (3:24-mj-04276) ¶¶ 33–34, Agent Hayden's assertions regarding key figures reported by Congressman Ogles's campaign committee, *id.* ¶¶ 35–39, and assertions concerning "the time period" in which those reports were made, *id.* ¶ 40. Also redacted are almost the entirety of Agent Hayden's assertions regarding Congressman Ogles's use of the subject device. *Id.* ¶¶ 41–44. Additionally, portions of the affidavit that recites facts from public FEC filings, including the names of individuals who had electronically signed those filings, are redacted. *Id.* ¶¶ 10, 22–23, 25–26, 28, 30.

For example, paragraph 10 states "[o]n or about April 6, 2022, the Committee filed a Statement of Organization with the FEC. The Committee listed [REDACTED] as the campaign treasurer," but the next two-and-a-half lines of text in that paragraph and the following four paragraphs are all redacted. *Id.* ¶ 10. And paragraph 22 states "[o]n or about August 25, 2022, the Committee filed a Statement of Organization with the FEC, replacing [redacted] as treasurer with [redacted]." *Id.* ¶ 22. But those public FEC filings list Congressman Ogles's campaign treasurers as Lee

Beaman and Thomas Datwyler respectively, as do multiple other filings referenced in the affidavits:

- The April 6, 2022, Statement of Organization referenced in paragraph 10, https://docquery.fec.gov/pdf/227/202204069495954227/202204069495954227.pdf (Beaman);

- The August 25, 2022 Statement of Organization referenced in paragraph 22, https://docquery.fec.gov/pdf/479/202208259528244479/202208259528244479.pdf (Datwyler);

- The October 15, 2022 Quarterly Report referenced in paragraph 23, https://docquery.fec.gov/pdf/322/202210159536888322/202210159536888322.pdf (Beaman);

- The January 30, 2023 Year-End Report referenced in paragraph 25, https://docquery.fec.gov/pdf/080/202301309575203080/202301309575203080.pdf (Datwyler);

- The April 15, 2023 Quarterly Report referenced in paragraph 26, https://docquery.fec.gov/pdf/560/202304159580631560/202304159580631560.pdf (Datwyler);

- The September 13, 2023 Amended Quarterly Report referenced in paragraph 28, https://docquery.fec.gov/pdf/322/202309139597052322/202309139597052322.pdf (Datwyler);

- The various amended reports submitted on May 22, 2024 referenced in paragraph 30, *see* https://www.fec.gov/data/filings/?data_type=processed&q_filer=C00811844&min_receipt_date=05%2F22%2F2024&max_receipt_date=05%2F22%2F2024 (Datwyler).

Similarly, the partially unsealed affidavit for the Email Warrant in case 3:24-mj-04250 redacted the information or evidence Agent Hayden had reviewed, Dkt. No. 45-1 (3:24-mj-04250) ¶ 35, Agent Hayden's assertions regarding key figures reported by Congressman Ogles's campaign committee, *id.* ¶¶ 38–42, and assertions concerning "the time periods" in which those reports were made, *id.* ¶ 43. Also redacted were substantial portions of Agent Hayden's assertions regarding Congressman Ogles's use of the subject account and "communications in furtherance of the scheme." *Id.* ¶¶ 44–49. Portions of descriptions of the same publicly filed FEC reports described above were also redacted. *Id.* ¶¶ 12, 24–25, 27–28, 30, 32.

## ARGUMENT

**I. The October 2 Order failed to articulate with sufficient specificity the reasons for redacting the warrant affidavits.**

In this Circuit, there is a "strong common law presumption in favor of public access to court proceedings and records." *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 594 (6th Cir. 2016). The reason for the presumption is simple: "[o]penness in judicial proceedings promotes public confidence in the courts." *Application of Nat'l Broad. Co., Inc.*, 828 F.2d 340, 347 (6th Cir. 1987). And access to "information contained in court documents" is critically necessary "because court records often provide important, sometimes the only, bases or explanations for a court's decision." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1177 (6th Cir. 1983). As such, "[a]ny attempt to maintain secrecy, as to the records of this court, would seem to be inconsistent with the common understanding of what belongs to a public court of record, to which all persons have the right of access." *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 474 (6th Cir. 1983) (quoting *Ex Parte Drawbraugh*, 2 App. D.C. 404, 407 (D.C. Cir. 1894)).

That presumption applies with full force to judicial records of warrant proceedings, including search warrants, applications, and affidavits. See Dkt. No. 33 at 8 (recognizing "presumption of public access for search warrants and search warrant materials is strong"); *United States v. Cohen*, 366 F. Supp. 3d 612, 621 (S.D.N.Y. 2019) ("[S]earch warrants and search warrant materials are entitled to a strong presumption of public access"). Because the Fourth Amendment protects against unreasonable searches and seizures and requires probable cause before a warrant may issue, U.S. Const. amend. IV, "a court's determination that a person's property may be seized involves the adjudication of that person's substantive rights." *United States v. All Funds on Deposit at Wells Fargo Bank in San Francisco, Ca., in Acct. No. 7986104185*, 643 F. Supp. 2d

577, 584 (S.D.N.Y. 2009). And applications and affidavits submitted by law enforcement in support of such warrants "contain the information forming the basis for the probable cause determinations that were prerequisites for the issuance of the seizure warrants." *Id.* Accordingly, even in a run-of-the-mill case, access to warrant application materials "serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police." *Bus. of Custer Battlefield Museum & Store*, 658 F.3d at 1194.

That strong common law presumption in favor of access may be abridged only "if, in the exercise of the court's sound discretion, [the court] determines that non-disclosure is warranted." *United States v. DeJournett*, 817 F.3d 479, 485 (6th Cir. 2016). "Having 'supervisory power' or 'discretion' to deny access to documents does not, however, imply that the District Court operates without standards." *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1177. Instead, a court must "articulate its reasoning" for sealing a judicial record by "identify[ing] the 'relevant facts and circumstances' justifying non-disclosure in "[the] particular case.'" *DeJournett*, 817 F.3d at 485 (quoting *Nixon*, 435 U.S. at 599). Moreover, sealing must be "no broader than necessary," *Shane Grp. v. Blue Cross Blue Shield of Mich*, 825 F.3d 299, 306 (6th Cir. 2016), and be demonstrated on a "document-by-document, line-by-line basis," *id.* at 308.

Here, the Magistrate Judge's October 2 Order fails to satisfy the common law standard because it simply states that "[t]he Court has reviewed *in camera* the Government's proposed redactions in each case and finds them appropriate without any changes." Dkt. No. 43 at 2. While a Court may, when a warrant is initially filed and where "time is of the essence," adopt the reasons for sealing submitted by the Government in "a detailed affidavit in support of its motion to seal the case explaining how disclosure of the search warrant documents would harm their criminal investigation," *In re Search of Fair Fin.*, 692 F.3d at 434, the investigation at issue here is closed.

The reasons the Government asserted in its initial motion to seal—that sealing was required "in order to protect the ongoing investigation," Dkt. No. 44-2 (3:24-mj-04276); *accord* Dkt No. 45-2 (3:24-mj-04250)—are no longer applicable. The Government did not file an opposition to Scripps's Motion to Intervene and Unseal asserting a particular need for these redactions. Nor did the October 2 Order explain the basis for the redactions. The common law requires more, especially where the redactions withhold from public view substantial information critical to the Government's probable cause showing in this extraordinary case.

**II. The October 2 Order adopts redactions to portions of the warrant affidavits that go to the heart of the Government's probable cause showing, which the public has a substantial interest in accessing and no countervailing interests justify withholding.**

Documents filed in connection with a warrant proceeding may be unsealed where "the public's right to know outweighs interests of privacy in sealing a particular document." *In re Search of Fair Fin.*, 692 F.3d at 433. As noted above, the Magistrate Judge's October 2 Order failed to articulate the reasons why this test favored sealing on a "line-by-line basis." *Shane Grp.*, 825 F.3d at 308. Had it done so, the conclusion would have been inescapable that the Government's proposed redactions are improper. On the public interest side of the scale, "the public is entitled to assess for itself the merits of judicial decisions," and thereby has an interest in "ascertaining what evidence and records" this Court relied on in reaching its decisions. *Id.* at 305. That includes applications and affidavits submitted by law enforcement in support of such warrants, because those affidavits "contain the information forming the basis for the probable cause determinations that were prerequisites for the issuance of the seizure warrants," *Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d at 584, thereby providing "important, sometimes the only, bases or explanations for a court's decision." *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1177. Agent Hayden's assertions regarding what evidence and information he reviewed before seeking the warrants, his assertions regarding the figures reported by Congressman Ogles's

campaign, and his assertions about Congressman Ogles's use of the subject device and email account were all plainly critical to the Government's probable cause showing here. Dkt. No. 44-1 (3:24-mj-04276) ¶¶ 33–44; Dkt No. 45-1 (3:24-mj-04250) ¶¶ 35, 28–49.

The public has a substantial interest in accessing these portions of the affidavits so that it may "assess for itself the merits" of the judicial decisions to issue the warrants that authorized the extraordinary seizure of property from a sitting U.S. Congressman. *Shane Grp.*, 825 F.3d at 305. Access to warrant affidavits "serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police." *Bus. of Custer Battlefield Museum & Store*, 658 F.3d at 1194; *see also In re Search Warrant for Secretarial Area Outside Off. of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988) ("[P]ublic access to documents filed in support of search warrants is important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct."). Here, that interest is even more pronounced—the warrants authorized the search and seizure of property and information from a member of the legislative branch. Such searches implicate sensitive separation of powers issues, *see, e.g.*, *United States v. Rayburn House Off. Bldg.*, 497 F.3d 654, 661 (D.C. Cir. 2007) (discussing implications of "the disclosure of legislative materials to agents of the Executive"), and heighten the public's interest in oversight.

Relatedly, the public has a strong interest in evaluating potential misconduct by federal law enforcement. *See Application of Nat'l Broad. Co., Inc.*, 635 F.2d 945, 952 (2d Cir. 1980) ("The presumption is especially strong in a case like this where the evidence shows the actions of public officials, both the defendants and law enforcement personnel."). Congressman Ogles has argued in these proceedings that investigators did "not have substantial evidence linking [him] to the commission of a crime," Dkt. No. 2 at 3, and has maintained that the investigation was improperly

motivated by political bias. *See id*. at 20 (arguing "only days before the Executive sought the search warrants, Congressman Ogles introduced articles of impeachment against Vice President Kamala Harris"). He has also asserted at a press conference that the "Biden Administration was willing to intentionally violate [the Speech and Debate Clause] to punish its adversaries, to target conservatives, specifically to target Republicans." *Rep. Andy Ogles News Conference on Justice Department Surveillance*, at 1:57–2:16., C-SPAN (May 13, 2026), https://bit.ly/45nV3s4. Again, the public has a powerful interest in accessing the Government's assertions that formed the basis of its probable cause showing so that it may "assess for itself the merits" of these claims. *Shane Grp.*, 825 F.3d at 305.

Additionally, "when the conduct of public officials is at issue, the public's interest in the operation of government adds weight in the balance" toward allowing access to judicial records. *Beckham*, 789 F.2d at 413. Here, the warrants authorized the search and seizure of property from a sitting U.S. Congressman seeking evidence concerning the propriety of his disclosures required by law during his campaign for public office. The public has a "powerful public interest in learning of a sitting [Congressman's] potential violation of" federal law, *see In re L.A. Times*, 28 F.4th at 298 (so recognizing in unsealing proceeding concerning warrant materials related to search of U.S. Senator), particularly violations of campaign finance disclosure laws. As the Supreme Court has recognized, such laws serve important public interests, because "full disclosure during an election campaign tends 'to prevent the corrupt use of money to affect elections,'" and "recordkeeping, reporting, and disclosure requirements are an essential means of gathering the data necessary to detect violations" of those laws. *Buckley v. Valeo*, 424 U.S. 1, 67–68 (1976) (cleaned up).

The October 2 Order does not contain any articulation of the reasons for maintaining the redacted material under seal, much less did it weigh any particular interests in secrecy against the

substantial public interests in disclosure outlined above. True, Congressman Ogles opposed disclosure, arguing his own privacy interests and the privacy interests of certain third parties justified withholding of the Warrant Materials either in whole or in part. *See generally* Dkt. No. 31. But the October 2 Order did not adopt, or even reference, these concerns.

To be sure, it would have been error to adopt Congressman Ogles's privacy concerns to justify the redactions at issue here. As Scripps explained at length in its Opposition to Congressman Ogles's Objections to the Magistrate Judge's September 4 Order, Dkt. No. 53 at 14–18, Congressman Ogles's privacy interests in this case are utterly insubstantial in light of his position as a public official; the fact that this investigation concerned conduct during his campaign for public office; and the extensive information that has already become known about this investigation by virtue of reporting by members of the media, the Government's disclosures in its public filings in these proceedings, and Congressman Ogles's own public acknowledgment of it. *See In re L.A. Times*, 28 F.4th at 298 (recognizing diminished privacy interests in warrant materials where "investigation involved actions taken by a public official in his public capacity," the investigation has been covered by "extensive media reporting," and the subject has themselves acknowledged it); *Matter of Application of Wash. Post Co. LLC*, 201 F. Supp. 3d 109, 125 (D.D.C. 2016) (ordering unsealing of warrant materials related to "publicly acknowledged investigation of widely known allegations of misconduct, significantly minimizing the risk that the requested disclosure would raise new privacy and reputational concerns").

That said, it would also be error to conclude that public access should be limited only that information that has already become "publicly known" or to that information which merely "confirm[s] that the search warrant applications in question did not suggest any investigation wider

than what has already been addressed in the OCC Report." Dkt. No. 33 at 8–9.[2] It is not enough here to say that the redacted material here would "include more detail than what has already been reported," *United States v. Cohen*, 366 F. Supp. 3d 612, 626 (S.D.N.Y. 2019); of course it would—that is precisely why the public has an interest in knowing what the redacted portions have to say. And the redacted portions of the affidavits would not meaningfully impact Congressman Ogles's privacy interests, where the already-disclosed portions already indicate that the investigation focused on the propriety of the reported net contributions, candidate loans, net expenditures, and cash on hand in the FEC filings by Congressman Ogles's campaign on or about July 23, 2022, January 30, 2023, April 15, 2023, and September 13, 2023, respectively. Dkt. No. 44-1 ¶¶ 35–39 (3:24-mj-04276); Dkt. No. 45-1 (3:24-mj-04250) ¶¶ 38–42. While Congressman Ogles obviously would prefer to control public debate concerning the factual assertions in the Government's affidavits, that is not reason enough to preclude the public from accessing the unredacted affidavits so that it may "assess for itself the merits" of the judicial decisions to issue the warrants that authorized the extraordinary seizure of property from a sitting U.S. Congressman. *Shane Grp.*, 825 F.3d at 305.

## III. The October 2 Order adopts redactions to portions of the warrant affidavits that would reveal the identities of third parties whose identities are already public as a

[2] As described in the Magistrate Judge's September 4 Order, Dkt. No. 33 at 2–4, on January 9, 2024, the Campaign Legal Center submitted a complaint about Congressman Ogles to the United States House of Representatives Office of Congressional Ethics, now known as the Office of Congressional Conduct ("OCC"). Letter from Kedric L. Payne, Gen. Couns., Campaign Legal Ctr., et al., to Paul Vinovich, Chairman, & Mike Barnes, Co-Chairman, Off. Cong. Ethics (Jan. 9, 2024), https://perma.cc/EHC8-V63M. On January 2, 2025, OCC referred Congressman Ogles to the House Ethics Committee on allegations that he "omitted or misrepresented required information in his financial disclosure statements or FEC candidate committee reports." Off. Cong. Conduct, *OCE Referral Regarding Rep. Andy Ogles* (Jan. 2, 2025), https://perma.cc/V653-YC97. The same day, OCC published a report detailing its investigation and findings, Off. Cong. Ethics, H.R., Report, Rev. No. 24-3057 (June 20, 2024), https://perma.cc/U6MR-Q36F ("OCC Report"), along with its accompanying exhibits, https://perma.cc/B7EF-KS4Q ("OCC Exhibits").

**function of federal campaign finance disclosure law and whose privacy interests do not justify withholding.**

Nor do third-party privacy interests justify the redactions at issue here. The partially redacted affidavits make clear that the release of the warrant affidavits would not "reveal details about otherwise private activities that significantly implicate an individual's privacy interests," *contra Matter of the Application of Wash, Post*, 201 F. Supp. 3d at 122. Instead, disclosure would reveal the identities and activities of third parties involved in conducting a campaign for public office, whose identities are already made public by operation of federal law. *See, e.g.*, 11 C.F.R. § 102.2 (requiring statements of organization to be filed with FEC to identify the "name and address of the treasurer," along with the "name, address, and committee position of the custodian of books and accounts"); 11 C.F.R. § 104.3 (describing reporting requirements). That includes the names of the campaign treasurers who were listed on certain public FEC filings which the affidavit describes, including Lee Beaman, who was listed as campaign treasurer on public filings dated April 6, 2022 and October 15, 2022, Dkt. No. 44-1 (3:24-mj-04276) ¶¶ 10, 23; Dkt. No. 45-1 (3:24-mj-04250) ¶¶ 12, 25, and Thomas Datwyler, who was listed on public filings dated August 25, 2022, January 30, 2023, April 15, 2023, September 13, 2023, and May 22, 2024, Dkt. No. 44-1 (3:24-mj-04276) ¶¶ 22, 25–26, 28, 30; Dkt. No. 45-1 (3:24-mj-04250) ¶ 24, 27–28, 30, 32. To the extent the redactions to the other portions of the affidavits at issue here are based on the privacy interests of Beaman or Datwyler, they should be overruled.

## CONCLUSION

For the foregoing reasons, and for the reasons previously explained in Scripps's Motion to Intervene and Unseal, Dkt. No. 26, Memorandum of Law in Support thereof, Dkt. No. 27, Reply in Further Support thereof, Dkt. No. 32, and Opposition to Congressman Ogles's Objections to the Magistrate Judge's September 4, 2026 Order, Dkt. No. 53, this Court should order that the

affidavits be released with redactions removed from Dkt. No. 44-1 (3:24-mj-04726) ¶¶ 10, 22–23, 25–26, 28, 30, 33–44; and from Dkt. No. 45-1 (3:24-mj-04250) ¶¶ 12, 24–25, 27–28, 30, 32, 35, 38–49.

DATED: October 16, 2026

Respectfully submitted,

*/s/ Paul R. McAdoo*

Paul R. McAdoo (BPR No. 034066)
REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS
6688 Nolensville Rd., Suite 108-20
Brentwood, TN 37027
Phone: 615.823.3633
Facsimile: 202.795.9310

*Counsel for Scripps Media, Inc.*

## CERTIFICATE OF SERVICE

I certify that on October 16, 2026, the foregoing Memorandum of Law in Support of Scripps Media, Inc.'s Objections to Magistrate Judge's October 2, 2026 Order was served upon counsel for the United States and for Congressman Andy Ogles via the CM/ECF system.

DATED: October 16, 2026

*/s/ Paul R. McAdoo*
Paul R. McAdoo (BPR No. 034066)
REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS

*Counsel for Scripps Media, Inc.*